INVESTMENT REGISTRY, Limited, v. CHICAGO & M. ELECTRIC R. CO. et al.

WESTERN TRUST & SAVINGS BANK et al. v. SAME.

(District Court, E. D. Wisconsin.  February 27, 1914.)

No. 80.

**1. RAILROADS (§ 192\*) — DEED OF TRUST — FORECLOSURE — CONFIRMATION OF SALE — APPLICATION — WITHDRAWAL.**

Where objections to a sale of a portion of a railway located in another state on foreclosure of a trust deed had been sustained and the sale set aside, and the same objections were applicable to a sale of the portion of the road located in Wisconsin under proceedings had in the federal court of that state, a motion by the trustees under the deed and the purchasers to withdraw their application for confirmation of the sale of the Wisconsin portion of the line would be granted without terms.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642; Dec. Dig. § 192.\*]

**2. RAILROADS (§ 186\*) — TRUST DEED — FORECLOSURE — BONDHOLDERS — PETITION TO INTERVENE — RIGHT TO FILE — DETERMINATION OF MERITS.**

Where a holder of bonds of an electric railway applied for leave to intervene in proceedings to foreclose a deed of trust on the property solely to displace the trustee under the deed on the ground that it and its officers had become disqualified by acting adversely to the interests of the bondholders, the practice or procedure by which the court should ascertain the fact was wholly discretionary; and hence it was not bound to determine the bondholder's right to file the petition separately from the merits thereof, but was entitled to consider, not only the matters appearing on the face of the petition, but the facts relating to the trustee as offered in response to a rule to show cause, to determine whether there was any reasonable ground to believe that the bondholders were not being properly represented.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 615, 616; Dec. Dig. § 186.\*]

**3. RAILROADS (§ 169\*) — MORTGAGES — FORECLOSURE — TRUSTEES — DISQUALIFICATION.**

Where a corporate trustee under a deed of trust, executed to secure bonds of an electric railway, acquired certain of the bonds under a "collateral trust indenture" executed by the railway, to wit, to secure certain collateral gold notes, and such trust indenture was exhibited, from which no conflict with the trust mortgage under foreclosure existed or was possible, save only in the contingency of the trustee obtaining an absolute title to the bonds so pledged in trust, and so far as the possession of the bonds enabled the trustee to participate in a reorganization plan,

---

it had given its assent subject to "securing a proper order of court authorizing the same," and the trustee also offered to and did resign its trust under the trust indenture, its interest therein did not disqualify it to perform its office as trustee under the deed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548; Dec. Dig. § 169.*]

4. RAILROADS (§ 169*)—MORTGAGES—TRUSTEES—ACTS OF OFFICERS—DISQUALIFICATION.

An electric railway extending through Illinois and Wisconsin was covered by two deeds of trust—one in Illinois covering the part of the property located in that state, and the other in Wisconsin covering the Wisconsin portion. Proceedings having been instituted in both states to foreclose the deeds, it was objected in the Wisconsin proceedings that the corporate trustee was disqualified. It appeared that another corporation, of whose 600 shares the president of the corporate trustee owned 100, owned 135 bonds of the railway, which had been deposited under a reorganization agreement. It also appeared that, connected with and operated by the receiver of the Illinois company, was a mile of railroad owned by the W. F. & W. Company, the stock and bonds of which were owned and controlled by the president of the corporate trustee, who had agreed to sell such stock and bonds to the reorganization committee of the railway, to be paid when reorganization was consummated, conditioned, however, on approval by the Illinois court or its receiver. *Held* that such facts did not warrant a finding that the corporate trustee was so adversely interested to the bondholders of the Wisconsin company as to disqualify it to represent them in the foreclosure proceedings.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548; Dec. Dig. § 169.*]

5. RAILROADS (§ 169*)—DEED OF TRUST—FORECLOSURE—ACTS OF TRUSTEES—DISQUALIFICATION.

Where proceedings were simultaneously instituted in Illinois and Wisconsin to foreclose a deed of trust covering the property of an electric railway located in those states, the fact that the trustees under the deed applied in Illinois for a confirmation of the sale of the Illinois property, which was denied, and that they thereafter applied for confirmation of the sale of the Wisconsin property, which was subject to the same objections, merely because in so doing they believed in good faith that they represented the desires of 90 per cent. of the beneficiaries under the deed, but after denial of confirmation in Illinois they withdrew their application therefor in Wisconsin, did not warrant a finding that they were disqualified to act for the bondholders, so as to authorize the court to permit a dissenting bondholder to intervene to protect the bondholders' interests.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548; Dec. Dig. § 169.*]

6. CORPORATIONS (§ 482*)—DEED OF TRUST—FORECLOSURE—REORGANIZATION PLAN.

Though the court, in proceedings to foreclose a corporate deed of trust, especially in connection with the price bid at the sale, may take cognizance of a pending reorganization plan to ascertain whether the bondholders are obtaining a fair return for the property sold, it is not the court's province to shift its function to foreclose and sell the property to an affirmative duty to pass on the quality of the reorganization plan, or to settle collateral controversies between the bondholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. § 482.*]

7. CORPORATIONS (§ 482*)—DEED OF TRUST—FORECLOSURE—REORGANIZATION PLAN—DISSENTING BONDHOLDER.

Where, in proceedings to foreclose a deed of trust on a corporation's property, a reorganization committee has offered what, in the light of a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bondholder's rights, is not a fair plan, the bondholder's refusal to accept it is not an equity chargeable against him when he seeks to object to the sale of the property, but the court will accord him a hearing to ascertain whether there has been a fair sale, and, if not, a resale will be ordered.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. § 482.*]

8. CORPORATIONS (§ 482*)—DEED OF TRUST—FORECLOSURE—SALE—RESALE—DISSENTING BONDHOLDER.

Where a sale of a corporation's property under a deed of trust had been set aside and a resale ordered, and there was nothing to show that the trustee under the deed representing the bondholders was disqualified, a dissenting bondholder, who was also a proposed bidder at the resale, would not be permitted to intervene to restrain a reorganization committee from carrying out the proposed reorganization agreement, and also to restrain the committee and certain persons who bid on its behalf at the former sale from bidding at the resale.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. § 482.*]

In Equity. Suit by the Investment Registry, Limited, against the Chicago & Milwaukee Electric Railroad Company and others, in which the Western Trust & Savings Bank and Willoughby G. Walling, as trustees under a deed of trust made by the defendant company, filed a cross-bill against the defendant company and others. Motions by cross-complainants and by Smith and Ford, purchasers, and a reorganization committee represented by them, to withdraw applications for confirmation of sale and for a new sale, and motion by John Griffiths, a bondholder, for leave to intervene. Motions by cross-complainants, etc., granted, and application for intervention denied.

Motions by the cross-complainants, Western Trust & Savings Bank and Willoughby G. Walling, the trustees under the mortgage of the Chicago & Milwaukee Electric Railroad Company (a Wisconsin corporation) foreclosed herein, and by Smith and Ford, the purchasers, and the reorganization committee they represent, to withdraw their applications for the confirmation of the sale had on September 25, 1912, pursuant to the decree of foreclosure and sale entered by this court on August 7, 1912; motion by John Griffiths, a bondholder, for leave to file his intervening petition herein.

"There are two Chicago & Milwaukee Electric Railroad companies organized under the laws of the states of Illinois and Wisconsin, respectively. Each company constructed an electric interurban railroad in the state of its organization. These two railroads were in reality one continuous line of track, extending from Evanston, Ill., to Milwaukee, Wis., with a branch in Illinois. In 1902, the Illinois company executed a mortgage covering all of its property to secure the payment of $5,000,000 of bonds, of which $4,000,000 were issued and are now outstanding. In 1905, the Wisconsin company executed a mortgage covering all of its property, to secure the payment of an issue of $10,000,000 of bonds, all of which were issued and remain unpaid.

"In January, 1908, proceedings by creditor's bill were started in the Circuit Court here and at Milwaukee, in the Eastern District of Wisconsin. In these proceedings receivers were appointed here and there. Subsequently bills were filed in the two jurisdictions to foreclose the mortgages mentioned, and these proceedings were consolidated with the original proceedings; the receivership having been continued to the present time. During the year 1912, decrees of sale were rendered here and at Milwaukee covering the property, respectively, of the two companies. The sales took place at Waukegan, Ill., and Racine, Wis., on September 25th, last. For the Illinois property $1,650,000 was offered, and for the Wisconsin property $1,600,000. These bids were made by agents representing a reorganization committee, with which committee

there had been deposited approximately 95 per cent. of each issue of bonds under foreclosure. There being no other bids, the master has recommended their acceptance. The objection comes from a holder of 12 Illinois bonds, which the owner refused to deposit under the proposed plan of reorganization, and, of course, attacks here only the Illinois sale."

This statement, taken from the opinion of the trial judge in Investment Registry, Limited, v. Chicago & Milwaukee Electric Railroad Company [D. C. North Dist., Ill.] 206 Fed. 488, 490, gives briefly the situation out of which the matters now before the court grow. In the opinion referred to, the conclusion was reached that the sale of the Illinois property be set aside; and a resale was ordered. From such order an appeal was taken. Pending such hearing in the District Court for Illinois, and the appeal, no further steps were taken in the Wisconsin proceedings, except the filing of a petition for the confirmation of the sale herein had and the presentation of the petition of Griffiths next referred to.

On February 15, 1913, John Griffiths presented to the court his petition, averring among other things, his ownership of 200 of the bonds, secured by the mortgage which was the subject of foreclosure, and asked leave to file it as an intervening petition, seeking through the same to be made a party to the consolidated cause, to object to the confirmation of the sale, and for affirmative relief as hereinafter stated.

On June 6, 1913, the Court of Appeals affirmed the ruling of the District Court for the Northern District of Illinois, 212 Fed. 594, 129 C. C. A. 130, and thereafter the trustees herein assuming that in obedience to such judgment of affirmance this court would likewise order a resale, made a motion, in which the purchasers at the sale under the decree of this court joined, to withdraw their previous applications for confirmation and to direct a resale of the property. At the same time the application of Griffiths to intervene was heard.

Moses, Rosenthal & Kennedy, of Chicago, Ill., Theodore Kronshage, Jr., John W. McMillan, and Hugh Ryan, all of Milwaukee, Wis., for intervener.

Rosenthal & Hamill, of Chicago, Ill., for cross-complainants.

Mayer, Meyer, Austrian & Platt, of Chicago, Ill., for purchasers and reorganization committee.

GEIGER, District Judge (after stating the facts as above). [1] The motion of the trustees and the purchasers to withdraw the application for confirmation of the sale must be granted, it seems to me, almost as a matter of course. The objections which were urged in the trial court and Court of Appeals in respect to the Illinois sale, it was conceded, were, or might be made, available here; and if, upon the prompting of the appellate court ruling and without contest here, the purchasers are content to relinquish any right which their bid may have given them, no reason is perceived for refusing to accept their offer, without the imposition of terms of any kind, as suggested by the proposed intervener.

The application for leave to file the intervening petition presents two grounds: (1) The partiality and consequent disqualification of the trustees, necessitating the admission of the bondholding petitioner Griffiths as a party, to enable him to protect his interests. (2) That on February 25, 1908, a committee known as the "Wisconsin Committee" was constituted by an agreement between the members thereof, named in the petition, and such Wisconsin bondholders (holding bonds secured by the mortgage now being foreclosed) who should deposit their bonds as in the agreement specified; that on October 10, 1908, a new agree-

ment was entered into between the same persons; that such committee agreed "to do or cause to be done whatever the committee in its sole discretion may deem expedient, necessary, or proper to preserve, protect, guard, secure or enforce the rights and interests of the depositors"; that petitioner, in reliance upon such agreement, deposited his bonds, thereby becoming a party to the new agreement, as in the petition alleged. Upon this is predicated petitioner's claim, in effect, that in the organization of such committee and the deposit of bonds therewith by petitioner, the committeemen became trustees, charged with the function of acting in behalf of the petitioner and other depositors as specified in the agreement; that notwithstanding such trust, and in violation thereof, the members subsequently joined in the formation of a "reorganization committee" of 10 members, 5 of whom were the individuals then and theretofore comprising the Wisconsin committee. The other members of the reorganization committee are alleged to have been, and were interested in part at least, in the organization of committees in the interest of the holders of bonds outstanding against the Illinois corporation. The reorganization committee thus constituted, prepared a plan of reorganization of both companies, which plan, dated January 26, 1912, contemplated the purchase of each of the properties in the interest of the respective bondholders who, by the deposit of their bonds with the committee, should become parties to the reorganization plan.

At the sales in each of the jurisdictions, this reorganization committee was the sole bidder and its bids came before each of the courts for acceptance and confirmation. The voluminous petition sets out in detail the various steps alleged to have been taken by bondholders of the respective corporations prior and leading up to the adoption of the plan of reorganization, the alleged conflict of interest and duty between the Wisconsin and Illinois interests in the perfection of such plan, the dual relation alleged to attend the membership of the five individuals named, in each of said committees, and hence their breach of trust in acting as members of the general reorganization committee and assenting to its plan, which is averred to be iniquitous and in effect to subordinate the interests of the Wisconsin to the interests of the Illinois bondholders.

The prayer is that the petition stand as presenting objections to the confirmation of the sale; that the acts of the Wisconsin committee be adjudged a breach of trust toward the petitioner; that such committee, and the reorganization committee, and their respective members, "be perpetually restrained and enjoined from further carrying into effect, * * * in whole or in part, said plan and agreement of reorganization; * * *" that the Wisconsin committee and its members be restrained and enjoined from further acting as members of the reorganization committee, etc.; that, if a new sale be ordered, then Smith and Ford (who bid on behalf of the reorganization committee) and the *reorganization committee* and its members, be *restrained* and *enjoined* "from bidding upon the properties, rights and franchises of said Wisconsin corporation and said West line in the name, or on behalf of, said reorganization committee, under and by

virtue and in pursuance of said agreement of January 26, 1912" (the reorganization agreement); and that the Wisconsin committee and its members be restrained and enjoined "from doing any acts or things contrary to the rights and interests of" petitioner, under the agreement of October 10, 1908 (the Wisconsin committee agreement), in furtherance of the reorganization plan.

In support of the first of the grounds mentioned—the disqualification of the trustees—these facts are urged:

(a) That one of the trustees, for some time prior to January 26, 1912 (the date of the general reorganization agreement), and at the date of the sale, was the "holder of 202 Wisconsin bonds secured by the mortgage," which is the subject of foreclosure, and that since the sales, such trustee "has consented and agreed in writing to deposit, subject to procuring the order of this court giving it leave so to do, its said 202 Wisconsin bonds under said plan and agreement" of reorganization.

(b) That Joseph E. Otis, the president of the corporation trustee was, during the times mentioned, the "owner or in control of and interested in 25 of the Wisconsin bonds," which bonds are said to have been deposited by him under the general reorganization plan.

(c) That Walling, one of the trustees, was at the date last above mentioned "head trust officer" of the corporation cotrustee, and a salaried officer thereof; and as such was not "acting independently of" the corporation cotrustee, but under its "directions and influenced by" its wishes.

(d) That both of the trustees appeared in the District Court in Illinois after the sales, and supported the motion in the proceedings therein, for confirmation of the sales (the facts concerning which sales are set forth in the petition, and are found in the reported case, 206 Fed. 488), and—

"actively participated, through their counsel, upon the hearing of certain objections to the confirmation of said sales, and continued to urge such confirmation, notwithstanding * * * such trustees, knew, or should have known, of the grossly inadequate prices bid by said proposed purchasers."

In this connection it is further urged that the trustees likewise joined the purchasers in an application to confirm the sale in this court (Eastern District of Wisconsin).

(e) That connected with, and operated by, the receiver of the Illinois corporation railroad is a mile of railroad owned by the Waukegan, Fox Lake & Western Railway Company. Its capital stock is $100,-000, and its properties are subject to an outstanding mortgage bond issue of $50,000. Such stock and bonds are averred to be owned and controlled by Otis, president and director of the corporation trustee herein. It is claimed that Otis made an agreement, on August 1, 1912, to sell to the reorganization committee the stock and bonds specified at a price of $56,000, to be paid, as stated, when the reorganization was consummated; that such agreement was in force on September 25, 1912, when the sale herein was had.

[2] When the petition thus filed was heard pursuant to a rule to show cause served upon the various parties interested, there arose, and

213 F.—32

throughout protracted argument was debated, this question, namely, the proper practice and procedure upon the presentation of petitions of this character; whether the court, in determining the *right to file* the petition, was or was not obliged to assume its allegations to be true, or whether it could proceed, by summary or other method, to inquire into their truth. It arose in this way: The petitioner attacked the trustees, the sale, and also the reorganization plan, asserting, in connection with the last, the breach of trust referred to. The trustees, as well as the purchasers, presented voluminous affidavits to rebut the petition in its various aspects.

The application for confirmation of the sale being now withdrawn, that feature of the petition, and any response thereto, is eliminated because another sale will be ordered. With respect to the attack upon the reorganization plan and the prayer for injunctive relief against future bidding by the reorganization committee—which is pressed as an independent ground for intervention—the question is eliminated because, as will appear, that portion of the petition will be disposed of on other grounds. Therefore it is necessary now to consider only whether the trustees should be heard upon the merits of the attack made by the petitioner in seeking to disqualify them from continuing in the sole control of the foreclosure proceedings.

[3] Now the petitioner, it will be recalled, charges that the corporation trustee herein is the owner of 202 bonds of the Wisconsin corporation. It is variously stated to be the "holder," to be "interested" in, to have a "dual capacity" concerning the bonds in question; and they are referred to as "its bonds." In short, the plain purpose is to charge a personal proprietary interest in bonds of the mortgage relative to which it is one of the trustees. Whether a trustee so circumstanced is to be disqualified from conducting as sole party, to the exclusion of other security holders, proceedings for foreclosure, whether the "rule of convenience" is to be put aside when once such fact appears, may be debatable. It is not doubted, however, that the allegations in question were intended to advise the court of the existence of that fact as disclosing the trustee's disqualification, from which as a necessary consequence, petitioner should be admitted as a party. But the trustee offers to show that, instead of having any personal interest therein, the 202 bonds are held by it as trustee under a "collateral trust indenture," dated March 1, 1907, executed by the defendant corporation to it to secure sundry "collateral gold notes"; the "collateral trust indenture" is exhibited, from which no conflict with the trust mortgage under foreclosure exists or is possible, save only in the contingency of obtaining an absolute title to the bonds so pledged in trust; that in so far as the possession of such 202 bonds enabled the trustee to participate in the reorganization plan, it had given its assent subject to "securing a proper order of court authorizing the same," this last noted fact also appearing expressly from the allegations of the proposed intervening petition; and finally, pending the hearing, and to avoid possible embarrassment, such trustee offered to and did resign its trust under the collateral trust indenture. It is not seriously contended that the facts are, or were, otherwise than as thus shown by the trustee.

[4] So, too, the allegation of the petition charging the ownership by Otis, the president of the corporation trustee herein, of 25 bonds, is met by his unequivocal denial and the counter allegation that a corporation, the General Liquidation Company. of whose 600 shares of stock he owns 100, does own 135 bonds which have been deposited under the reorganization agreement. This, too, seems to be conceded as the fact.

Respecting the contract alleged to have been made by Otis for the sale of the securities of the Waukegan, Fox Lake & Western Railway, the trustee offers to show that the proposition was conditioned upon approval by the Illinois court or its receiver.

It may be that where a person not already interested or represented in a suit seeks to intervene—where intervention proper is sought—the court should not first determine the cause of action set out in the bill or petition in order to determine the right to intervene. Thus where one seeks by intervention to lay claim to the subject-matter of a suit and obtain a decree which, in his absence, would go to another, the court cannot do otherwise than consider whether his petition, if proven, would entitle him to relief if a party. But, as suggested to counsel upon the argument, is this true where one, having an interest in the suit, excluded as a party under a rule of convenience and because represented by a trustee, seeks to displace his trustee, or to join him in active participation in the suit? He does not seek to assert any interest, or to obtain any relief, not already assertable or grantable on his behalf, if the *trustee will but attend* to it. His attack is directed at his own representative to whom his interests in the suit have been committed, and who is the sole party under the rule adopted to enable the court to discharge its functions in this class of cases. The court, in this situation, is not concerned with the question whether a bondholder has any interest in the suit, or any right which is entitled to protection. That is conceded. The only question is, Shall the rule be relaxed because the representative has become disqualified any longer to discharge his duty toward the several interests in the suit? and the question is to be determined, not merely upon charges which may be made, but upon the facts as they really exist at the time when the court is asked to admit the beneficiary into active participation in the suit. In this situation, the practice or procedure by which the court shall ascertain the fact is wholly discretionary. Undoubtedly the trustee could be required to take formal issue by answer to the petition, and a trial thereon had; so, too, a reference to a master might be made to inquire into the merits of the petition without answer thereto; and no reason is perceived why the court should not proceed directly to ascertain the facts in any manner deemed convenient or adequate in the particular situation presented. Inasmuch as the petition is presented for no purpose save that of displacing the trustee, or admitting the bondholder, the *right to file* the petition need not be determined separately or apart from its merits; and the conclusion is reached that in the present case the court can, in its discretion, consider not only the matters appearing on the face of the petition, but also the facts relating

to the trustee, as they are offered (and, as noted, not seriously controverted) to be shown in response to the rule to show cause.

The question is therefore, Do the facts respecting the corporation trustee's relation to the railway corporation under the "collateral trust indenture," Otis' ownership of stock in another corporation, which owns certain of the bonds secured by the mortgage under foreclosure (and which bonds have been deposited under the reorganization plan), Otis' alleged contract respecting the Waukegan, Fox Lake & Western Railway, put such trustee in such a position that its impartiality can be challenged? Certainly under the collateral trust indenture, it acquired no junior or other conflicting interest in the property conveyed to it by the deed under foreclosure. It assumed no duty whose performance was at variance with any imposed upon it by the latter. The most that can be said is that by the collateral trust indenture it obtained possession of certain of the bonds which might ripen into ownership, or, in certain contingencies, enable it to assert a control thereover—as, for example, to influence their use, in the present case, in assent to the reorganization plan. It is my judgment that a trustee ought not to so place itself. The efficient discharge of duty is likely to be endangered whether the trustee is upon debatable or upon forbidden ground. The trustee herein doubtless realized this when it gave assent to the deposit of the collateral trust bonds, subject to the approval of the court. That reservation, however, is quite persuasive in establishing its good faith and its design to subordinate every other obligation to its primary duty as trustee under the foreclosure proceedings; and the act of resigning the collateral trusteeship, even after the attack was made by the bondholder, ought to be accepted as in furtherance of its primary duty to be impartial and to avoid possible embarrassment, rather than as a confession of wrong consequent upon which such trustee must be deemed unfit any longer to be in sole control of the litigation. The facts, therefore, as shown by the petition and by the trustee respecting the latter's relation to these 202 bonds do not support the claim of disqualification.

The ownership of stock in a corporation which owns certain of the bonds does, in a certain sense, give Otis, the president of the corporation trustee herein, an interest in the bonds, but he is in no sense the owner or possessed of any legal interest, and for that matter has no legal control thereover; and, until it appears that he has done some act which in fact commits the trustee herein to some policy or situation at variance, actually or potentially, with its duty as trustee, his remote and indirect interest thus held certainly cannot disqualify the trustee. So long as such corporation trustee appears free from any conflict of interest, the possible conflicting position of one of its officials, unaccompanied by any act of hostility which is chargeable to the corporation itself, will not justify a want of confidence in such trustee.

With respect to the Waukegan, Fox Lake & Western Railway contract, charged to have been entered into by Otis, the contention is also made that by virtue thereof he has an interest in the success of the reorganization plan, which is, or may be, in conflict with his duty as the chief executive of the corporation trustee. This, if true, discloses a

more direct interest than that last above considered; but the question again arises whether it must, without regard to other considerations, prove a disqualification of the trustee. In this connection, as well as in the matter next to be considered, it is a fact of controlling importance that no dereliction whatever is charged against the trustee in the enforcement of the rights committed to it, down to and including the decree of foreclosure and the bringing of the property to a sale. No attack has been, or can be, made against the decree, and no claim is made that the property must not come to a sale by virtue thereof, except the claim now advanced that the reorganization committee should not be permitted to bid. No suggestion is made that the decree does not conform with decrees usual in cases of this kind, or that it fails to afford to all bondholders a full measure of equality and protection. In this situation, and until there has been another sale, the trustee can only stand by and await the further execution of the decree by the master; and the existence of Otis' contract, which appears to be entered into subject to the approval of the Illinois court, is not a disqualification.

[5] It is charged that in the Illinois proceeding the trustees joined in a motion for confirmation of the sale; that they joined here in the Wisconsin proceeding, in a motion for confirmation, which motion was pending when the confirmation of the sale in Illinois was denied, and also when the ruling of the Illinois court was affirmed; that the trustees then knew, "or should have known," of the invalidity of the sale because of the facts upon which confirmation was refused. Of course, a trustee may, if he chooses, and if the matter of confirmation is moved in court by the bidders or purchasers, stand aloof and merely await the result. But he may also, and, broadly speaking, he must, take whatever steps are necessary to fully discharge his duty in reaping the benefits of the proceeding to the end that his trust obligations may be terminated and the beneficiaries satisfied; and it would seem that some duty, either to ask for or oppose confirmation, rests upon the trustee, primarily, as the party plaintiff. Obviously, in determining whether he shall act, and if so, how, he must exercise, in good faith, his best judgment. In the Illinois proceeding, objections to the sale were interposed and successfully prosecuted by the holder of three-tenths of 1 per cent. of the outstanding bonds; and in the proceedings here the objector and proposed intervener has substantially 2 per cent. of the Wisconsin bonds. Now, it may be assumed that, in determining whether they should take any attitude upon confirmation, in either of these proceedings, the trustees here justifiably took cognizance of the wishes of those of their beneficiaries who favored it, in each case at least 95 per cent. Having moved for such confirmation (not only in discharge of the independent right and duty of the trustees, but also in reliance upon such wishes), is such act available to a dissenting bondholder when a resale is ordered, as a permanent badge of bad faith and partiality on the part of the trustees in the conduct of all future proceedings? If so, then a trustee exercises his undoubted right at his peril, and must be ready thereafter, no matter how long the proceeding continue to divide his control with the dissenting bondholder, whether the

latter prevail upon his objections, or not. The ultimate correctness of their respective views cannot be the test. In the matter before us, the motion for confirmation being now withdrawn, there is nothing to be done but to proceed with a resale. This must go pursuant to the terms of the original decree and the order which will be entered, and involves the doing of no act by the trustees which will imperil the interest of any bondholder; and the act of the trustees in joining in the proceedings for the confirmation of the Illinois sale, though it failed to meet the sanction of the court, does not, in view of the withdrawal here of the motion of the trustees, conflict with good faith, nor at this time necessitate dividing the control of the suit.

[6] There remains for consideration the question whether petitioner should be allowed to intervene to obtain the affirmative relief by way of restraining the Wisconsin and the general reorganization committees from again bidding because of the former's breach of an alleged trust obligation which it owed to the petitioner. If it be conceded, as certainly it must be, that under the decree herein any reorganization committee may become a bidder, and, upon a sufficient bid, the purchaser, then the intervention by the petitioner for the purpose stated must obviously, and until the merits of the controversy tendered by the petition can be finally determined, suspend further proceedings under such decree. A sale could not be had until it is decided whether the reorganization committee must be eliminated as a bidder. To this it is replied that, if necessary in order to prevent the breach of the trust claimed to exist, it should be stayed. The difficulty with this contention is that, although in foreclosure proceedings, and especially in connection with the price bid at the sale, the court may take cognizance of a pending reorganization plan to ascertain whether the security holder is obtaining a just and fair return out of the property sold, it is not its province to shift its function to foreclose and sell the property to any affirmative duty to pass upon the quality of the reorganization plan—much less to endeavor to settle collateral controversies arising between security holders.

The District Court in Illinois (206 Fed. 488), in denying the motion to confirm the sale, passed upon the single question whether the bid was inadequate as a result of chilling or suppression, whether the facts charged showed a suppression of competition. The Court of Appeals (212 Fed. 594, 129 C. C. A. 130) had before it these same questions. Whatever is contained in its opinion in reference to reorganization plans and the necessity of fair treatment of all security holders bears solely and directly upon the main proposition that courts must, to protect to the fullest extent nondepositing bondholders, clearly recognize the control over bidding situations which reorganization committees usually possess.

Judge Baker said:

"When a nondepositing bondholder objects to confirmation solely on the ground that the reorganization committee's bid, though not grossly inadequate, was substantially short of the fair value, the answer is that his co-owners of the common mortgage and the common decree offered him the opportunity to deposit his bonds and to share equally with them the benefits of the purchase. But, in sales of this class, we never have observed or heard of a

case where the minority were turned away without having been given by the majority a fair opportunity to share equally with them the benefits of the purchase—where for example, 95 per cent. of the bondholders of a vast railroad or industrial enterprise have combined and then shut the door upon the scattered 5 per cent. And no just distinction can be drawn, we believe, whether the door be shut or unconscionable conditions of entrance be imposed.

"A reorganization plan is somewhat like an insurance policy or a bill of lading, against which there is no protection except through legislative control of the insurance and railroad companies' offerings. The solitary and distant bondholders must accept the reorganization plan or let it alone, as it is written. When the unitary property of a single company of the kind in question is to be reorganized, the persons who assume or accept the committeeship, realizing the equality of all bondholders and recognizing that no bondholder has any right to preferential treatment, usually offer a plan that will give the common owners of the mortgage equal benefits through the foreclosure, usually become nothing but the agency through which the bondholders act for their mutual protection. In such a reorganization, if the bondholder does not come through the foreclosure as well off as any other bondholder, it is his own fault. In the case at bar, the reorganization committee was not a mere agency for appellee and her fellow Illinois bondholders; under sweeping powers, to be exercised 'at its sole discretion,' it could buy bonds, take up claims of subordinate right, allow compensation to pre-existing committees and assume their contracts, and do anything and everything it saw fit to do, whether specified or not. Preferential treatment of Illinois bondholders. who were acting in the primary interest of their Wisconsin bonds, was accorded in many ways. * * * Thus the Illinois property, which in equity belonged to the Illinois bondholders in equal right under the mortgage and under the foreclosure decree, would, in the hands of appellant, be loaded down with premiums, bonuses, services, expenses, etc., with which neither appellee nor any other Illinois bondholder as such had any concern. Therefore no inequity was chargeable to appellee in asking the court to open a door of fair opportunity.

"No matter what the plan, it does not matter whether the committee bids much or little if all the bondholders are in. Here, some $160,000 of bonds were outstanding. And the temptation to use the monopoly of bidding for the purpose of recouping partially the outside expenses and losses of the majority at the expense of the minority seems to have been too strong."

[7] This language, as is clearly seen, is used in response to the contention, in effect, that a bondholder who stays out of a reorganization plan does so at the peril of being obliged to accept the reorganization committee's bid for the property, and, having been offered the opportunity to join the plan, cannot complain, no matter how low the bid. But, as indicated, this would leave the reorganization committee the power to oppress the bondholder in any or all of three ways; by denying admission, by imposing unconscionable conditions, or by purchasing without regard to value. In other words, when a reorganization committee has offered what in the light of the security holder's rights under the mortgage is not a *fair plan,* the refusal of a bondholder to accept it, is not an equity chargeable against him when he seeks to object to the judicial sale; but the court will accord such bondholder a hearing to ascertain whether there has been a *fair sale.* If there has not been such, then, by way of "opening a door of fair opportunity" to such bondholder, a resale should be ordered. In a sense, it may be true that foreclosures of the character before us are frequently instituted by parties as a means of, or incidental to, reorganization; but the court does not undertake to carry out the reorganization and by its

decree declare it to be satisfactory to all parties in interest. Its only ultimate function can be to see that the security holder's interest in the property is converted to his use through a sale at a fair price.

[8] The petitioner appears, not only as a dissenting bondholder, but also as a proposed bidder at the resale. It is hard to understand why any other bidder should, under these conditions, be eliminated. If the reorganization committee has a commanding position, its ejection from the bidding field certainly would not tend to increase the amount which petitioner would bid. Very likely it would result in a rather efficient transfer of the command. I do not think that the court at this time is concerned with anything other than obtaining an adequate price at a resale.

An order may be entered denying the petition for intervention, also an order directing a resale.